## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT TOPEKA

| | |
|---|---|
| INTERSCOPE RECORDS, a California general partnership; ARISTA RECORDS LLC, a Delaware limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITAL RECORDS, INC., a Delaware corporation; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; LAFACE RECORDS LLC, a Delaware limited liability company; MOTOWN RECORD COMPANY, L.P., a California limited partnership; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; WARNER BROS. RECORDS INC., a Delaware corporation; and ZOMBA RECORDING LLC, a Delaware limited liability company,  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  )  ) | **CIVIL ACTION**<br>**CASE NO. :07-4107-RDR** |
| Plaintiffs,  )  )  ) | |
| v.  )  ) | |
| DOES 1 – 14,  )  )  ) | |
| Defendants.  )  )  )  ) | |

### ORDER

This matter comes before the court upon defendant Doe no. 11's Motion to Quash (Doc. 9) and defendant Doe no. 6's Motion to Quash (Doc. 11) (hereinafter "Doe Defendants"). Plaintiffs have filed responses to both motions (Docs. 14 and 15). Neither Doe Defendant has filed a reply, and the time to do so has passed.[1] As a result, the matter is fully briefed and ripe for disposition.

---

[1] *See* D. Kan. Rule 6.1(d).

I.    **Background**

Plaintiffs filed a Complaint alleging copyright infringement against various Doe Defendants.[2] Plaintiff also sought to ascertain the identity of these Doe Defendants by service of a Rule 45 subpoena on the University of Kansas seeking information that identifies each Doe Defendant, including the name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control addresses for each defendant.

In support of their request for ex-parte discovery Plaintiffs attached the Affidavit of Carlos Linares, Vice President for Anti-Piracy Legal Affairs for the Recording Industry Association of America, Inc. ("RIAA").  Mr. Linares explained that immediate ex parte discovery was warranted because (1) prompt identification of infringers is necessary for copyright owners to take quick action (2) infringement of this nature often involves sound recordings that have not yet been distributed publicly (3) without expedited discovery plaintiffs cannot identify defendants' names, address, or e-mail addresses; and (4) Internet Service Providers (ISPs) have different policies pertaining to the length of time they preserve "logs" which identify their users; this time period can range from as short as a few days to a few months before they erase the data.[3]

On October 1, 2007, the court entered an order permitting the  ex parte discovery. The court noted that because plaintiffs sought very specific information regarding a certain group of likely readily identifiable people, the scope of the discovery was sufficiently narrow.  The court further stated that disclosure of the information pursuant to the subpoena was consistent with the University of Kansas' obligations under 20 U.S.C. § 1232g, the Family and Education Right and Privacy Act of 1974 ("FERPA") but that the University of Kansas could seek to quash the subpoena.[4]

--------

[2]*See* Complaint (Doc. 1).

[3]*Id.* at (Exhibit A) p. 8-9.

[4]*See e.g.*, Memorandum in Support (Doc. 4) at (Exhibit B) p. 24, 28 (orders from district courts in the Tenth Circuit specifically providing the third-party the opportunity to quash the subpoena).

On February 6, 2008, James P. Pottorff, Jr., General Counsel for the University of Kansas was personally served with the subpoena.[5]  According to the pending motions, the University of Kansas was to have complied with the subpoena by March 7, 2008.  However, the pending motions were filed on February 27, 2007 and March 5, 2008, and it is unclear from the briefing whether the University of Kansas has complied with the subpoena.  However, subsequent to March 7, 2008, plaintiffs have dismissed their claims against Doe Defendants nos. 3, 9 and 12.[6]

## II.    Parties' contentions

The Defendant Does argue that "[p]laintiff should be required to show that its interests are superior to the privacy interests of John Doe # [6 and] 11"[7] because if this subpoena is not quashed they will suffer "irreparable harm."  Defendant Does also argue that the information plaintiffs seek from the University of Kansas is confidential and protected from disclosure under the Family and Education Right and Privacy Act of 1974 ("FERPA"), 20 U.S.C.§ 1232g, *et seq.*

In turn, plaintiffs argue that they have ascertained significant instances of copyright infringement by these two Doe Defendants and have determined their Internet Protocol ("IP").  However, plaintiffs have not been able to ascertain defendants' names, and since the University of Kansas maintains a log matching IP addresses with the user's computer hardware, the University can match the IP address, date, and time with the computer that was using the IP address when plaintiffs logged the instances of infringement.  Plaintiffs argue that the Doe Defendants' First Amendment privacy protections do not permit copyright infringement and that on balance their need to ascertain the Doe Defendants' identities outweighs any privacy interest.  Similarly, plaintiffs argue that FERPA does not bar and, in fact, expressly permits discovery of the information sought.

---

[5]*See* Return of Service (Doc. 7) at p. 2.

[6]*See* Notice of Dismissal (Docs. 12 and 13).

[7]Motion to Quash (Doc. 9) at p. 2.

**III**      **Discussion**

Federal Rule of Civil Procedure 45 provides that a court may quash or modify a subpoena, in part, if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]"[8]  Here, the court construes Doe Defendants' arguments as seeking protection under this provision of Rule 45.

**A.**      **First Amendment**

Plaintiffs treat Doe Defendants' argument that plaintiffs should have to prove that their interest outweighs Doe Defendants' privacy interests as a First Amendment argument.  Because the court is without the benefit reply briefs from Doe Defendants in support of their motions to quash, their position on this issue is not clear.   However, plaintiffs argue, and this court agrees, that to the extent plaintiffs are required to prove their interest is greater than Doe Defendants, they have made such a showing.

Courts have routinely held that a person using the Internet to distribute or download copyrighted music without authorization "is engaging in the exercise of speech, but only to a limited extent, and the First Amendment does not protect the person's identity from disclosure."[9]  For example, in *Sony Music Entertainment, Inc. v. Does 1-40*, the court allowed the plaintiffs to serve a subpoena ex parte upon a non-party cable service provider in order to ascertain the identities of Doe defendants accused of illegally distributing and downloading copyrighted music.[10]  After the cable provider notified the alleged infringers, an attorney representing one of the Doe defendants sought to quash the subpoena based, in part, on First Amendment grounds.[11]

---

[8]*See* Fed. R. Civ. P. 45(c)(3)(A).

[9]*UMG  Recordings, Inc., v. Does*, No. 06-0652, 2006 U.S. Dist. LEXIS 32821 (N.D. Ca. March 6, 2006)(citing *Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 558 (S.D.N.Y. 2004)).

[10]326 F. Supp. 2d at 558-59.

[11]*Id.* at 560-61.

First, the *Sony* court noted that the Supreme Court has held that the First Amendment does not protect copyright infringement.[12] As to the First Amendment challenge, the *Sony* court reasoned that a person who distributes or downloads sound recordings seeks to obtain music for free and is not attempting to convey a thought or an idea.[13]  However, the court reasoned that in downloading selected music and distributing music to others, a person could be making a statement of self-expression.[14]  As a result, the *Sony* court held that distributing and downloading sound recordings amounted to speech, but only to a limited extent.[15]  Then the court considered five factors to determine whether the First Amendment protected the defendants' identities from disclosure, namely:

> (1) a concrete showing of a prima facie claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the Doe defendants' expectation of privacy.[16]

In applying these factors, the court reasoned: (1) as to copyright infringement which requires ownership of a valid patent and copying the original work absent permission, plaintiffs had made a prima facie showing; (2) the"sufficiently specific" discovery request demonstrated a reasonable likelihood that it would lead to information identifying defendants making service upon the defendants possible; (3) the plaintiffs had no other means to obtain the subpoenaed information because a search of a publicly available database of IP addresses would yield no additional information; (4) obtaining the identities of the defendants was essential to plaintiffs' ability to pursue the litigation, because without the information plaintiffs could not complete service of process; and

---

[12]*Id.* at 563 (citing *Harper & Row Publishers, Inc. v. Nation Enters*, 471 U.S. 539, 555-56 (1985)).

[13]*Id.* at 564.

[14]*Id.*

[15]*Id.*

[16]*Id.* at 565-66.

(5) defendants had little expectation of privacy because the cable company's service terms stated it had the right to disclose any information necessary "to satisfy any law, regulation, or other governmental request," and because defendants had diminished any expectation of privacy by opening their computers to others through peer-to-peer file sharing.[17]  As a result, the *Sony* court concluded that all five factors weighed in the plaintiffs' favor and that the First Amendment did not protect the disclosure of the defendants' identities.

Through a similar analysis this court also concludes that plaintiffs have overcome the Doe Defendants' limited privacy interests.  First, plaintiffs have made a prima facie showing of copyright infringement.[18]  Second, because the discovery request seeks only names, addresses and telephone numbers, e-mail addresses, and Media Access Control addresses for the people associated with certain IP addresses at certain times, it is "sufficiently specific" to demonstrate a reasonable likelihood that the request will lead to information identifying defendants.  Third, plaintiffs lack other means to ascertain the subpoenaed information, as only the University of Kansas can match the instances of alleged infringement with the identifying information.  Fourth, obtaining the identities of the defendants is essential to plaintiffs' ability to pursue the litigation because without the information plaintiffs cannot serve process on the Doe Defendants.  Finally, the Doe Defendants had little expectation of privacy because they opened their computers to others through peer-to-peer file sharing.  Although Doe Defendants are, to a limited extent, engaged in First Amendment speech, the five factors weight heavily in favor of compelling disclosure of the identifying information sought.

---

[17]*Id.* at 565-67.

[18]*See* Memorandum in Support of Ex Parte Discovery (Doc. 4) at (Exhibit A)(Linares Affidavit); Complaint (Doc. 1).

B.      FERPA

Doe Defendants cite the Family and Education Right and Privacy Act of 1974 ("FERPA"), 20 U.S.C.§ 1232g, generally to argue that the University cannot disclose their identities.  However, Doe Defendants did not articulate how the University would be in violation FERPA by disclosing the information sought.

FERPA generally prohibits disclosure by federally-funded educational institutions of certain student records and specifically provides, in pertinent part, that:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . .) of students without the written consent of the parents to any individual, agency, or organization . . . .[19]

However, FERPA "expressly provides that protected information can be disclosed pursuant to court order."[20]  The court in *Laface Records, LLC v. Does 1-5* found on this basis alone that FERPA did not warrant the quashing of subpoenas seeking the identities of alleged student infringers directed at a federally-funded institution of higher education.[21]  The court reasoned that "[t]he limited information allowed under the subpoena minimizes the risk that unnecessary private information would become public as a result of the order."[22] So too here, the limited scope of the subpoena makes it unlikely that private information would become public as a result of this order.

Plaintiffs also argue that the sort of information sought by the subpoena involves "directory

---

[19]*See* 20 U.S.C. §§ 1232g(a) and (b)(1).

[20]*Warner Bros. Records Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007)(citing 20 U.S.C. § 1232g(b)(2)(B)).

[21]*See e.g.*, *Laface Records, LLC v. Does 1-5*, No. 07-cv-187, 2008 U.S. Dist. LEXIS 13638, at *11 (W.D. Mich. Feb. 22, 2008)(citing 20 U.S.C. § 1232g(b)(2)(B) as a basis for declining to quash a subpoena seeking identifying information of alleged copyright infringers from a federally-funded institution of higher education).

[22]*Laface Records, LLC v. Does 1-5*, No. 07-cv-187, 2008 U.S. Dist. LEXIS 13638, at *11 (W.D. Mich. Feb. 22, 2008).

information" and thus the privacy limits of FERPA do not come into play.[23]   FERPA defines "educational records" as "those records, files, documents, or other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution."[24]   In turn, FERPA defines "directory information" as "the student's name, address, telephone listing, date and place of birth . . . ."[25]

A recent case from the Eastern District of Tennessee, *Virgin Records America, Inc. v. Does 1-33*, found that Rule 45 did not warrant quashing a subpoena served upon the University of Tennessee at Knoxville which sought an alleged student infringer's "name, address, telephone number, e-mal address, and Media Access Control address ('MAC address')".[26] However, the court made this ruling after thoroughly analyzing the University's FERPA policy.  While this court was able to find the University of Kansas' FERPA policy,[27] the court is unwilling to engage in a blind discussion about the University's policy and its intersection with the requirements of FERPA.  Since the court has already found that FERPA is not a barrier to the University of Kansas' disclosure of this information, whether the information sought amounts to "directory information" is not material.

Accordingly,

IT IS THEREFORE ORDERED that Defendant Doe no. 11's Motion to Quash (Doc. 9) and Defendant Doe no. 6's Motion to Quash (Doc. 11) are denied.

IT SO ORDERED.

---

[23]Memorandum in Opposition (Doc. 15) at p. 5.

[24]*See* 20 U.S.C. § 1232g(a)(4)(A); *United States v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002).

[25]20 U.S.C. § 1232g(a)(5)(A).

[26] No. 07-CV-235, 2007 U.S. Dist. LEXIS 79134, at * 2 (E.D. Tenn. Oct. 24, 2007).

[27]University of Kansas' Student Records Policy: Policy and Procedures Guide to the Family Educational Rights and Privacy Act, available at http://www.vpss.ku.edu/records.shtml#dirinfo.

Dated this 11th day of April, 2008 at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge